UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON

CIVIL ACTION NO. 02-425-GWU, 03-91-GWU

ANCE BUSH,                                                                                            PLAINTIFF,

VS.                               **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,                           DEFENDANT.

## INTRODUCTION

The plaintiff appeals from the termination of Supplemental Security Income (SSI) benefits originally awarded in 1995, and from the denial of subsequent SSI benefit claims.  After period of administrative reconsideration, this consolidated appeal is before the Court on cross-motions for summary judgment.

## APPLICABLE LAW

On March 29, 1996, Congress enacted Pub. L. No. 104-121 (1996) which barred a finding of disability if drug addiction or alcoholism is "a contributing factor material to" the determination of disability.  Pub. L. No. 104-121 §105(a)(1).  It also required that disability benefits based upon substance abuse disorders be terminated as of January 1, 1997.  Pub. L. 104-121 §105(b)(5)(A).

Nonetheless, a claimant's benefits need not be terminated if he could be found disabled otherwise under the standard disability analyses provided by the Sixth Circuit Court of Appeals:

1

**Bush**

1. Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2. See 20 CFR 404.1520(b), 416.920(b).

2. Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. See 20 CFR 404.1508, 416.908.

3. Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If yes, proceed to Step 4. If no, the claimant is not disabled. See 20 CFR 404.1520(c), 404.1521, 416.920(c), 461.921.

4. Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. See 20 CFR 404.920(d), 416.920(d).

5. Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6. See 20 CFR 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6. Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work? If yes, the claimant was not disabled. If no, proceed to Step 7. See 20 CFR 404.1520(e), 416.920(e).

7. Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy? If yes, the claimant is not disabled. See 20 CFR 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

**Bush**

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply.  Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence.  Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991).  This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight.  Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim.  Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982).  This presumes, of course, that the treating physician's opinion is based on objective medical findings.  Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984).  Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary.  Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987).  These have long been well-settled principles within the Circuit.  Jones, 945 F.2d at 1370.

**Bush**

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 CFR Section 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

<u>Duncan v. Secretary of Health and Human Services</u>, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. <u>Harris v. Secretary of Health and Human Services</u>, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. <u>Id. Accord, Johnson v. Secretary of Health and Human Services</u>, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-

4

**Bush**

ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 CFR 416.965(a) and 20 CFR 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 CFR Part 404, Subpart P, Appendix 2 and

analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 CFR 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 CFR 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 CFR Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record

reveals that the agency relied entirely on the grid.  Ibid.  In such cases, the agency may be required to consult a vocational specialist.  Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985).  Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments.  Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The latest administrative law judge (ALJ) decision was to the effect that the plaintiff had not been under a disability at any time since January, 1997, when the agency had originally determined to terminate his SSI benefits.  The ALJ noted that the original award decision had listed alcoholism as the central cause for disability (Tr. 25) and, thus, the case was subject to re-evaluation as that was no longer a proper subject for an award of benefits.  He found that as of March, 2000, the plaintiff's "severe" conditions concerned dysthymia, borderline intellectual functioning, hearing loss, and wrist pain stemming from a recent fracture. (Tr. 28). However, he also determined that, as of June 17, 2000, the claimant's left wrist problem became "non-severe." (Tr. 26).  The restrictions imposed would still allow the plaintiff, who was unable to perform his past work, to perform a significant number of jobs identified by Vocational Expert Linda Sparrow. (Tr. 30).

**Bush**

      Assuming for the sake of argument that the basis for the award decision focused, in material part, on the plaintiff's alcoholism[1] and that the case was properly subject to review, the Court concludes that the hypothetical question posed to the vocational expert did not contain adequate restrictions to take into account Bush's hearing restrictions. The hypothetical question merely referred to the plaintiff's need to "avoid situations *requiring keen hearing*" (Tr. 49) (emphasis added). However, his treating physician had diagnosed right severe to profound hearing loss and left mild to profound hearing loss as of the mid-1990s. (Tr. 128). One consultative examiner, in 1999, referred to the fact that he had had to repeat himself during the evaluation, even though Bush was already utilizing a hearing aid. (Tr. 132). That same year, an audiologist, the only one of record, indicated that the plaintiff would find it very difficult to hear and understand in "most" settings, especially where there was background noise. (Tr. 139). A medical reviewer indicated that the plaintiff should avoid environments with noise, or where he would be required to use the telephone. (Tr. 141). Another stated that the plaintiff should avoid all exposure to noise. (Tr. 170). Even Medical Reviewer Gary Higgason, who had seen the result of the most recent consultative examination, opined that the plaintiff should avoid "all" noise. (Tr.

---

[1] The plaintiff contends that he had been determined to satisfy Listing of Impairments Section *12.05C*, and that he had been diagnosed with mild mental retardation and an anxiety disorder. Plaintiff's Brief, Docket Entry No. 22, at p. 1. No copy of the original award decision is contained in the present administrative transcript. Since the case is going to be remanded for further consideration on other grounds, the additional exhibits relating to the termination of benefits should be added to the present record, so that the basis of the original award can be fully determined.

**Bush**

356). In 2000, Medical Reviewer Timothy Gregg stated that the plaintiff should not work at positions requiring him to localize sound or where he could not avoid hazards, and noted that he should avoid even moderate exposure to noise. (Tr. 404). Thus, the vast majority of medical information and opinions of record (including that from the only audiologist of record) suggest far greater limitations that the simple restriction noted in the hypothetical question.

The case will be remanded for further consideration.

This the 21st day of March, 2007.

Signed By:

*G. Wix Unthank*

United States Senior Judge